UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J.G.O.,<br><br>                     Petitioner,<br><br>        -against-<br><br>LaDeon Francis et al.,<br><br>                     Respondents. | 25-CV-7233 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

    This is a habeas petition brought by a noncitizen, J.G.O., who was released from detention on bond by an Immigration Judge (IJ). The IJ's decision was initially affirmed by the Board of Immigration Appeals (BIA). But then, based on a series of shifting rationales, his release was repeatedly withheld. That ends here. The Court GRANTS the petition and orders J.G.O.'s release on the terms set by the IJ.

## BACKGROUND

    J.G.O. is a noncitizen who came to the United States in 2022 from Venezuela. Dkt. 1-3 at 1. He was arrested shortly after entry and detained under 8 U.S.C. § 1226(a). Dkt. 12-2 at 1. He was then released on his own recognizance without any conditions. Dkt. 12-3 at 1. Over the next two and-a-half years, J.G.O. lived in the United States, worked as a construction worker, and applied for asylum. Dkt. 1-3 at 1, 5. In early 2025, he was again arrested and detained by ICE while living in New York City. Dkt. 1-2 at 3. That kickstarted a Kafkaesque process of attempted removal and detention.

    The government first tried to get J.G.O. out of the country by putting him on a plane to a megaprison in El Salvador without a hearing or any other process. Dkt. 1-2 at 3–4. While J.G.O. was on the tarmac, a federal court ordered the government not to remove him and others who had sued to enjoin their removal. Dkt. 1-2 at 4; *J.G.G. v. Trump*, 25-cv-766 (D.D.C. Mar. 15, 2025). That was followed by a nationwide injunction, from which the government sought an emergency stay. The government lost in the D.C. Circuit, but then got the stay from the Supreme Court, which held that the plaintiffs needed to file for habeas relief in their own judicial districts. *J.G.G. v. Trump*, 2025 WL 914682 (D.C. Cir. 2025); *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). J.G.O. filed a petition here, in the Southern District of New York, and was granted an injunction against his removal. *G.F.F. v. Trump*, 2025 WL 1301052 (S.D.N.Y. May 6, 2025).

    In the meantime, J.G.O. pursued his release from detention. The government claimed that it had detained him under 8 U.S.C. § 1226(c), which doesn't allow for release of any sort. But

§ 1226(c) applies only to noncitizens who meet certain other criteria, most of which involve committing a crime. The government argued that J.G.O. was a member of Tren de Aragua, which the State Department had designated a terrorist organization a few months earlier. If true, then J.G.O. wouldn't qualify for bond, at least as a matter of statute. 8 U.S.C. § 1226(c)(1)(D) (cross-referencing 8 U.S.C. § 1182(a)(3)(B)). The IJ rejected that argument, finding "extremely limited information that would tend to support the … allegation that [J.G.O.] is a member of Tren de Aragua." Dkt. 1-3 at 2. That led to the conclusion that J.G.O. was detained under § 1226(a), not (c), and so was eligible for bond pending removal. The IJ set bond at $7,500. *Id.* at 6. The BIA dismissed the government's appeal. Dkt. 1-7.

Then J.G.O. tried to post bond. A community bail fund sent the money to ICE on his behalf. Dkt. 1-9 at 1. After accepting payment, ICE notified J.G.O. that his bond was denied for cryptic reasons—an "automatic stay" was in effect because "the date still [f]alls within the 5 day window of the automatic stay as per OPLA." *Id.* Once five business days had passed, J.G.O. tried to pay his bond again. ICE accepted the payment and then denied bond again. This time, ICE stated only that it was "per EOIR." *Id.* at 2. It turns out that the government had filed for a discretionary stay pending a motion for reconsideration before the BIA, but that J.G.O. hadn't been notified. Dkts. 1-8 at 2; 1 at 9–11.

J.G.O. proceeded to file another habeas petition, this time to be released from detention on the terms set by the IJ. Dkt. 1; 28 U.S.C. § 2241. But while this petition was pending, the ground shifted under him yet again. The BIA granted the government's motion for reconsideration on grounds never urged by the government. It held that J.G.O. wasn't detained under either § 1226(a) (as he argued) or § 1226(c) (as the government argued), but instead under § 1225(b)(2) (which also doesn't allow for bond). The government then argued in this Court that, because of the change in the state of play, J.G.O.'s entire habeas petition was moot and that he needed to file an amended one and do this all over again, again. The Court granted leave for J.G.O. to amend his petition, he filed an amended petition, and that petition is now up for the Court's review.

## DISCUSSION

The central question in this case is which statutory provision J.G.O. is detained under. There are two potential options. Depending on which one applies, he is or isn't statutorily eligible for bond. The options are 8 U.S.C. § 1226(a) and 8 U.S.C. § 1225(b)(2). If J.G.O. is detained under § 1226(a) (as the IJ and BIA both initially found), then detention isn't mandatory. Instead, "the Attorney General … may release the alien on bond." 8 U.S.C. § 1226(a)(2)(A); 8 C.F.R. § 1236.1(d)(1) (regulation providing for bond). But if he's detained under § 1225(b)(2), then "the alien shall be detained"—in other words, no bond. 8 U.S.C. 1225(b)(2)(A).

This Court is far from the first to address this question. Across the country, the government has repeatedly engaged in the same behavior displayed here. It has detained noncitizens pursuant to § 1226(a), then, only afterward, argued that they were instead detained under § 1225(b)(2) and ineligible for bond. That has led to a raft of decisions, most of which have rejected the government's position. They are so numerous that only a handful are cited here as illustrative examples.

*See, e.g.*, *Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) (rejecting the government's position); *Martinez v. Hyde*, 2025 WL 2084238 (D. Mass. Jul. 24, 2025) (same); *Guerrero Orellana v. Moniz*, 2025 WL 2809996 (D. Mass. Oct. 3, 2025) (same); *Lepe v. Andrews*, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025) (same); *Artiga v. Genalo*, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025) (same). To be sure, not *every* court has rejected this argument—the government identified two that adopted it, along with the BIA. *See, e.g.*, *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Matter of Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). With that backdrop in mind, the Court proceeds to take a fresh look at the statutes at issue, § 1226(a) and § 1225(b)(2).

The provisions apply in different contexts. Section 1226(a) grants the government authority to detain an alien during removal proceedings. Its text is short and plain; it applies to "an alien … pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). When the government detained J.G.O., it started removal proceedings (that are still ongoing), so there's no question that detention under 1226(a) would be proper.

The text of § 1225(b)(2) is much less straightforward. It requires detention of "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). That language clearly yields two requirements: The alien must be "an applicant for admission" and an immigration officer must determine that the applicant "is not clearly and beyond a doubt entitled to be admitted." *Id.* But that doesn't take account of all the statutory language; it also applies only to "an alien seeking admission." The question, then, is whether that creates a third statutory requirement that the alien actively seek admission.

That question is puzzling at first blush. How can an "applicant for admission" not "seek admission?" This oddity is explained by the statutory definition of the phrase "applicant for admission." *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 585 (1995) (Thomas, J., dissenting) ("The canon that we construe a statutory term in accordance with its ordinary or natural meaning applies only in the absence of a statutory definition." (cleaned up)). Section 1225(a) defines "applicant for admission" as: "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a). That definition doesn't require an application of any sort. All that's needed is presence without admission—in other words, it applies to the great number of undocumented immigrants who currently live here. By contrast, "seeking admission" might mean something more than that—some active desire or process toward admission. J.G.O argues that because he's already here (and so cannot "seek admission"), § 1225(b)(2) can't apply to him. He's right.

To understand why, start with the text of the statute. It explicitly includes the phrase "seeking admission." Because "courts must give effect, if possible, to every clause and word of a statute," that phrase must take on some meaning that wouldn't make it "superfluous," considering the separate term "applicant for admission." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (internal quotations omitted). What, then, does it mean to "seek admission?" The Immigration and Naturalization Act (INA) defines "admission" as "the lawful entry of the alien into the United States after

3

inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). And "entry," which is undefined, can be given its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (internal quotations omitted); *United States v. Santos*, 553 U.S. 507, 511 (2008) ("When a term is undefined, we give it its ordinary meaning."). That meaning is "entering into … (a country)," which is "[t]o come or go in." *Entry*, OXFORD ENGLISH DICTIONARY (2d ed. 1989); *Enter*, OXFORD ENGLISH DICTIONARY (2d ed. 1989). In a more specific legal context, it also means going into a place. *Entry*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("any coming of an alien into the U.S."). And "seeking" is written in the present-progressive tense, which "is used to refer to an action or a state that is continuing to happen." *Progressive Tense*, MERRIAM WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/progressive%20tense (last visited October 27, 2025). Putting that all together, "seeking admission" requires an alien to *continue* to want to *go into* the country. The problem, as J.G.O. points out, is that he's already here; you can't go into a place where you already are.

The government's attempt to explain away this verbiage backfires. It points to another part of the statute that reads: "aliens who are applicants for admission or otherwise seeking admission." Dkt. 26 at 9 (citing 8 U.S.C. § 1225(a)(3)). That's supposed to suggest that the two categories are coterminous. But that's not how lists work or how the word "or" works. Its "ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings." *Loughrin*, 573 U.S. at 357 (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)). Similarly, "otherwise" means "something or anything else." *Otherwise*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2001). Taken together, "or otherwise" is "used to refer to something that is different from something already mentioned." *Or otherwise*, MERRIAM WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/or%20otherwise (last visited October 27, 2025). On top of that, this is just another example of the government's construction inviting surplusage into the statute. That Congress chose to include this additional phrase—"seeking admission"—not once but (according to the government) multiple times suggests that it must mean something distinct.

That reading of the words in § 1225 is buttressed by their "context and … their place in the overall statutory scheme." *Gundy v. United States*, 588 U.S. 128, 141 (2019) (internal quotations omitted). Start with their context. Every part of § 1225 suggests that it applies to aliens who are arriving in the country. Section 1225(b)(2) is suggestively titled "*Inspection* of other aliens," referring to a process that occurs when somebody *arrives* in this country. 8 U.S.C. § 1225(b)(2) (emphasis added); 8 C.F.R. § 235.1(a). Then the provision goes on to provide more contextual evidence. It lays out a list of aliens who are *excluded*: crewmen, stowaways, and other arriving noncitizens with fraudulent or defective documentation. *See id.* § 1225(b)(2)(B). Each class of people on that list includes somebody who is entering the country, not somebody who's already here; and though the list is one of exceptions, it's suggestive of the type of person who's meant to be covered. That same theme is repeated in the very next subsection after that list, § 1225(b)(2)(C). It describes the "[t]reatment of aliens arriving from contiguous territory" under § 1225(b)(2), again indicating that people arriving from a contiguous country make up a subset of *arriving* people, the group covered by §1225(b)(2) more generally.

4

Next consider the statutory scheme. J.G.O.'s construction of § 1225 fits neatly with § 1226, which governs the "[a]pprehension and detention of aliens." 8 U.S.C. § 1226. Together, they cover aliens presenting at arrival (under § 1225) and then everybody else (under § 1226). And just as § 1225 is littered with language that would apply only to arrivals, § 1226 is filled with language that would most clearly apply to people who are already here. For example, it applies only when the Attorney general has "issued" a "warrant." 8 U.S.C. § 1226(a). It requires the Attorney General to take the alien into "custody." *Id.* § 1226(c)(1). And it incorporates a series of U.S. common law crimes. *See, e.g.*, 8 U.S.C. § 1226(c)(1)(E)(ii), (2) (referencing "burglary, theft, [and] larceny," which "have the meanings given such terms in the jurisdiction in which the acts occurred"). Put simply, § 1226 "generally governs the process of arresting and detaining" aliens "once inside the United States" "pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

That neat schema is further confirmed by § 1226's amendment history. In early 2025, Congress amended the statute. At the time, § 1226(c) provided for the mandatory detention of an alien "present in the United States without being admitted or paroled" who had committed certain offenses (for example, a crime of moral turpitude). 8 U.S.C. § 1226(c)(1)(E) (cross-referencing the quoted text in § 1182(a)(6)(A)). Congress expanded that list of offenses by adding "burglary, theft, larceny, shoplifting" and a few other crimes. Laken Riley Act, Pub. L. 119-1 at 1. That portion of the amendment would have had no legal effect under the government's reading because the mandatory detention of those very same people would have been required under § 1225 without some additional crime. So the government is wrong that no part of § 1226 is rendered redundant by its proposed construction of § 1225.

Against all that, the government argues that J.G.O.'s construction is "at odds" with the "entry fiction." Dkt. 26 at 9. But the entry fiction isn't relevant to this analysis. The entry fiction is a doctrine that dictates what *constitutional* rights are due to a noncitizen who is physically present in the United States (for example, because of detention or parole) but hasn't been lawfully admitted. *Nishimura Ekiu v. United States*, 142 U.S. 651, 661 (1892). Under this doctrine, "whatever the procedure authorized by Congress is, it is due process." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Here, the question is what procedure Congress authorized. So even assuming that the entry fiction would apply to J.G.O., it wouldn't affect this *statutory* analysis.

But the entry fiction wouldn't apply to J.G.O. in the first place. Even though the fiction stretches to noncitizens stopped at or near the border, J.G.O. was arrested and detained in New York, nowhere near Texas (where he crossed). The government suggests that the relevant arrest was not this one, but his first one—all the way back in 2022. If he was paroled, the argument goes, then the entry fiction still applies. *See Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958). But that argument is flatly inconsistent with the record. J.G.O. wasn't released on parole. He was released on his "own recognizance." Dkt. 12-3 at 1. Release on your own recognizance isn't parole "into the United States," which "permits a non-citizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the non-citizen 'as if stopped at the border.'" *Martinez*, 2025 WL 2084238, at *3 (quoting *DHS v. Thuraissigiam*, 591 U.S. 103,

5

139 (2020)); 8 U.S.C. § 1182(d)(5)(A). It "instead releases a non-citizen already in the country from domestic detention." *Martinez*, 2025 WL 2084238, at *3. So the entry fiction is irrelevant twice-over.

* * * * *

Where does that leave J.G.O.? He was granted bond by the IJ and the BIA dismissed the government's appeal. The BIA changed its mind on reconsideration, but in doing so it consciously declined to re-examine its prior reasons for dismissing the appeal, even in the alternative. Instead, it did something that even the government wasn't urging in J.G.O.'s case. It held that a different statute applied and that bond wasn't available at all, a determination that—as addressed here—was legally wrong and is entitled to no deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

Further, as the government agrees, neither the automatic nor the discretionary stay of the IJ's order releasing J.G.O. on bond is in place. Given this Court's holding that J.G.O. is being detained pursuant to § 1226(a), and not § 1225(b)(2), he should be released on bond in accordance with the original decisions of the IJ and BIA. Because the Court rests on this statutory holding (and because the parties agree that any other analysis would be unnecessary), it need not address J.G.O.'s constitutional arguments, arguments under the APA, or those about the innate power of the Court to compel J.G.O.'s release.

## CONCLUSION

J.G.O.'s detention has been improperly prolonged by a constantly moving set of goalposts. That ends now. The petition is GRANTED and J.G.O. is ordered to be immediately released in accordance with the terms of bond imposed by the IJ.

SO ORDERED.

Dated: October 28, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge